IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

RICKY L. MOORE,  :

           Plaintiff,

  -vs-

BURGER KING, *et al.*,

           Defendants.  :

Case No. 3:11-cv-151

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendants' Motion for Summary Judgment. (Doc. 22). The parties have fully briefed the issues, (*Id.*, Doc. 24, 25), and the Motion is ripe for decision. Because a summary judgment motion is classified as dispositive under the Magistrate's Act, the Magistrate Judge offers the following proposed findings of fact and recommendation for disposition for final determination by District Judge Rice.

Plaintiff Ricky L. Moore brought this action *pro se* and is therefore entitled to have his pleadings liberally construed. *Williams v. CSX Transportation Co., Inc.* 643 F.3d 502, 510 (6th Cir, 2011), citing *Federal Exp. Corp. v, Holowecki,* 552 U.S. 389, 402 (2008); see also, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *McNeil v. United States,* 508 U.S. 106, 113 (1993).

Mr. Moore brought this action against his former employer Burger King and his former supervisor Matthew Daugherty alleging that they retaliated against him in violation of Title VII

of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* (Title VII) and the Age Discrimination in Employment Act, 29 U.S.C. § 623, *et seq.* (ADEA). (Doc. 2)1. Specifically, Mr. Moore alleges that in October, 2009, he filed a claim of race and age discrimination with the Ohio Civil Rights Commission (OCRC) which the OCRC dismissed and which dismissal the Equal Employment Opportunity Commission (EEOC) affirmed. Mr. Moore claims that Mr. Daugherty became his supervisor in January, 2010; that in March, 2010, Mr. Daugherty demoted him and reduced his pay; and that Mr. Daugherty took those actions in retaliation for his (Mr. Moore's) previous protected activity of filing charges with the OCRC.

Defendants have moved for summary judgment on several grounds. (Doc. 22). First, Defendants argue that Mr. Moore's retaliation claim is without merit because Mr. Moore's own deposition testimony establishes that he has no evidence to support his retaliation claims. Defendants argue next that they have articulated legitimate, nondiscriminatory business reasons for their actions and Mr. Moore is unable to prove that those reasons were a pretext for discrimination. Defendants also argue that to the extent that Mr. Moore has alleged race and age discrimination, those claims are untimely and that, in the alternative, Mr. Moore is not able to establish a *prima facie* case of either race or age discrimination.

In opposition to Defendants' Motion, Mr. Moore has alleged that Defendants have engaged in unfair labor practices since September, 2008. (Doc. 24). Mr. Moore also argues that he, a forty-eight year-old Black male, was denied the opportunity to participate in a training program at a training store whereas a younger white male participated in the program, that Defendants submitted a forged document to the OCRC investigator, that following his filing a claim of discrimination with the OCRC., Mr. Daugherty demoted him and reduced his pay, and

---

1 Mr. Moore does not state that his claims are brought under Title VII. Because he could not sue Mr. Dougherty individually under Title VII, the Court construes his claims against Mr. Dougherty as brought under Ohio Revised Code § 4112.02 which does allow for individual liability.

that Defendants' witnesses did not work with him for any length of time.  Mr. Moore has not produced any evidence admissible under Fed. R. Civ. P. 56(c)(1) or (4) to support his opposition to Defendants' Motion.

In Reply, the Defendants essentially argue that Mr. Moore has failed to come forward with any admissible evidence that supports his claim for retaliation or that establishes a causal connection between his protected activity and any adverse employment action Defendants took against him that would establish pretext. (Doc. 25).  Defendants also argue that Mr. Moore's arguments in opposition are not based on record facts.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute[2] as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  On a motion for summary judgment, the movant has the burden of showing that there exists no genuine [dispute] of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157-59 (1970). Nevertheless, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;  the requirement is that there be no *genuine* [dispute] of *material* fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).  Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

---

[2] The word "dispute" was substituted for "issue" in Fed. R. Civ. P. 56 as of December 1, 2010. The amendment, according to its drafters, did not change the summary judgment standard.

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a Rule 50 motion for judgment as a matter of law. *See, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

> The moving party
>
> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine [dispute] of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). In ruling on a motion for summary judgment (in other words, determining whether there is a genuine [dispute] of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine dispute of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

With these principles in mind, the facts of this case, for purposes of the present Motion, are as follows.

Vicki Francis is a District Manager for the Burger King Corporation. Declaration of Vicki Francis, May 8, 2012 ("Francis Dec."), Doc. 22 Attachment 1 thereto, PageID 230. Burger King is in the "fast food" or "quick service" restaurant business and has an operational structure for each of its restaurants and districts. *Id.* A district manager oversees a number of Burger King restaurants. *Id.* A general manager is responsible for the overall operations of one restaurant and reports to a district manager. *Id.* An assistant general manager reports to the general manager and is responsible for the operations of a store in the general manager's absence. *Id.*

There are usually two shift coordinators in each restaurant who report to the general manager. *Id.* at PageID 230-31. Shift coordinators are non-exempt hourly employees who assist management personnel with general operations during the coordinator's assigned shift. *Id.* at PageID 231. District managers, general managers, assistant general managers, and shift coordinators must be "Serve Safe Certified" which requires that they be efficient at operating each station within the restaurant and capable of managing the minute-to-minute operations of the restaurant. *Id.* Each Burger King restaurant has a staff of team members who are responsible for the minute-to-minute duties such as preparing sandwiches, stocking storage areas, operating cash registers, and ensuring customer satisfaction. *Id.*

Burger King requires that all prospective shift coordinators be trained at a Burger King training restaurant and become "Serve Safe Certified" before assuming shift coordinator duties. *Id.* The training lasts about seven weeks, takes place at a training store, and requires the trainee to become efficient at each work station in the restaurant. *Id.* The training includes performing the following job responsibilities: (1) opening and closing the restaurant; (2) managing and operating the restaurant during assigned shifts; (3) providing production direction to team members; (4) delegating duties to team members; (5) directing, training, and motivating team

members during shifts; and (6) completing checklists and procedures for cash reporting, inventory control, and scheduling during a shift. *Id.*

Burger King generally trains a team member on-the-job in the restaurant at which he or she will regularly work. *Id.* Team member duties include: (1) greeting customers; (2) receiving orders; (3) processing payments; (4) operating cash registers; (5) preparing and packaging food and drink products; (6) cleaning the kitchen and dining room areas; (7) unloading and stocking inventory; and (8) working multiple workstations (*e.g.,* front counter, drive-thru, prep boards, expediter, etc.). *Id.*

Mr. Moore met Donnie Smith, a district manager, at a jobs fair in May, 2008, where they discussed the possibility of Mr. Moore becoming a Burger King employee. Ricky Moore Deposition, Feb. 7, 2012, Doc. 21 at 100-03, PageID 113-14 (filed May 18, 2012)("Moore Depo."). Subsequently, Mr. Moore met with Mr. Smith at Burger King's Brown Street restaurant and they discussed Mr. Moore's potential employment by Burger King as a shift coordinator. *Id.*

Mr. Moore began working for Burger King on May 14, 2008. *Id.* Mr. Moore signed his employment paperwork with help from Carol Davis who was, at the time, the general manager of the Brown Street Burger King restaurant. Moore Depo., Exs. D, E, F, H, and L thereto. Burger King sent Mr. Moore to train under Vicki Francis who was a training manager for Burger King at the time and who managed a Burger King training restaurant located on Brandt Pike. Moore Depo. At 104-07, PageID 114-15; Francis Dec. PageID 232.

Ms. Francis tried to help Mr. Moore with the training to become a shift coordinator. *Id.*; Moore Depo. at 107, PageID 115. However, after a few weeks of training at the Brandt Pike restaurant, Ms. Francis concluded that Mr. Moore was not capable of performing the shift coordinator duties. Francis Dec., PageID 232. Ms. Francis observed that Mr. Moore would

show up at varying times for work—sometimes very early and sometimes late—that he was generally slow and appeared to struggle to understand what was required of him, and that he demonstrated poor leadership skills. *Id.* Burger King removed Mr. Moore from being trained by Ms. Francis at the Brandt Pike restaurant and sent him to the Brown Street restaurant. *Id.*

At the Brown Street restaurant, Mr. Moore reported directly to Carol Davis who was the general manager of that restaurant. Declaration of Carol Lemons-Davis, May 8, 2012 ("Davis Dec."), Doc. 22 Attachment 2 thereto, PageID 234-35; Moore Depo. at 110-12, 115, PageID 116, 117. Dwayne Smith, an African-American male, who was the same age as Mr. Moore, was the assistant manager at the Brown Street restaurant. Moore Depo., *supra.* In addition, Joel McNealy, a Caucasian male and Athena [last name unkown], an African-American female, were the shift coordinators at the Brown Street restaurant. Moore Depo. at 110-12, PageID 116; Davis Dec., PageID 235.

When Mr. Moore returned to the Brown Street restaurant, he worked as a team member because he had failed to complete shift coordinator training at the Brandt Pike restaurant. Moore Depo. at 137-39, 145-49, PageID 122-23, 124-25; Davis Dec., PageID 235. Although Mr. Moore was performing team member duties, Burger King continued to classify him as a manager-in-training and paid him $10.00 per hour, the standard rate for shift coordinators and which was higher than the wage for team members. Moore Depo. at 137-39, 145-49, 162-65, PageID 122-23, 124-24, 129; Davis Dec., PageID 235.

Ms. Davis monitored Mr. Moore's performance as a team member in order to assess his potential for becoming a shift coordinator. Davis Dec., PageID 235. Ms. Davis observed Mr. Moore perform his duties inaccurately, inefficiently, and below basic standards. *Id.* For

example, she observed that Mr. Moore was unable to prepare hamburgers in a timely fashion. *Id.*; Francis Dec., PageID 232.

Mr. Moore failed to show up for work on Saturday, June 14, 2008, and failed to contact anyone at Burger King concerning his absence until shortly before the end of his scheduled shift. Moore Depo. at 116-121, PageID 117; *Id*., Ex. B thereto, PageID 179. Mr. Smith, the assistant manager at the Brown Street restaurant, gave Mr. Moore a Written Counseling for the incident. *Id.*

In September, 2008, Mr. Smith, the area manager for Burger King who had hired Mr. Moore, removed Mr. Moore from the management-in-training program due to his failure to properly perform some basic tasks like making sandwiches in a timely fashion. Davis Dec., PageID 236.  About this same time, Ms. Davis told Mr. Moore that he was not "Burger King material" and that Burger King would not permit him to continue to train as a manager.  Moore Dep., Ex. E  thereto, PageID 182.  Mr. Moore never performed shift coordinator duties.  Davis Dec., PageID 236; Francis Dec., PageID 232; Moore Depo. at 114, 137-39, 145-49, PageID 117, 122-23, 124-25.  During Mr. Moore's employment with Burger King, he performed only team member duties. *Id.* at 137-39, 145-49, PageID 122-23, 125.

On November 8, 2008, Burger King, gave Mr. Moore another written warning. *Id.* at 132-35, PageID 121-22;  *Id.,*  Ex. C thereto, PageID 180.   In that warning, Ms. Davis indicated that on November 7, 2008, Mr. Moore had failed to work the station to which he was assigned and that it was his responsibility to meet Burger King's standard of making a sandwich in thirty seconds or less and to have speed of service within the standard of two minutes and fifteen seconds. *Id.* The warning also indicated that Mr. Moore had been verbally warned in September about his performance as a manager-in-training at which time Burger King removed him from

the training program. *Id.* Mr. Moore continued to perform team member duties and receive the higher shift coordinator pay rate. Moore Depo. at 137-39, 145-49, 162-65, PageID 122-23, 124-25, 129; Davis Dec., PageID 236.

On December 24, 2008, Mr. Moore filed a Charge of Discrimination with the OCRC and the EEOC alleging that Burger King discriminated against him on the bases of race and age. Moore Depo., Ex. E thereto, PageID 182. Specifically, Mr. Moore alleged that Burger King discriminated against him when, after he attended one week of manager training, it denied him further training and a promotion to the position of shift coordinator. *Id.* On September 30, 2009, the OCRC advised Mr. Moore that it had determined there was no probable cause to believe that Burger King had engaged in an unlawful discriminatory practice. *Id.,* Ex. F thereto, PageID 183-84. On December 22, 2009, the EEOC advised Mr. Moore that it had adopted the OCRC's findings and was closing its file on his charge against Burger King and it (EEOC) issued a Right to Sue Notice. Moore Depo*.,* at 188-89, PageID 135; *Id.*, Ex. G thereto, PageID 185. Mr. Moore received the EEOC's notice and Right to Sue Notice in late December, 2009, or early January, 2010. Moore Depo. at 189, PageID 135.

John Falk, Jr., was a human resources manager for Burger King during the period of about January, 2009, through December, 2011, Declaration of John Falk, Jr., May 9, 2012 ("Falk Dec."), Doc. 22, Attachment 3 thereto, PageID 237. On or about January 1, 2010, Matthew Dougherty became the general manager of the Brown Street restaurant. *Id.*; Declaration of Matthew Dougherty, May 11, 2012 ("Dougherty Dec."), Doc. 22, Attachment 4 thereto, PageID 240. When Mr. Dougherty started working at the Brown Street restaurant, Mr. Moore was performing team member duties. *Id.* Shortly after he began working at the Brown Street restaurant, Mr. Daugherty observed that Mr. Moore made sandwiches too slowly, moved slowly,

and did not appropriately perform his job duties. *Id.* Mr. Dougherty consulted with Mr. Smith, the district manager and Mr. Falk about Mr. Moore's continued employment and in February, 2010, Mr. Dougherty gave Mr. Moore a below-average performance review. Falk Dec., PageID 237-38; Dougherty Dec., PageID 241; Moore Depo. at 192-99, PageID 136-38, *Id.*, Ex. I attached thereto, PageID 198-99.

Sometime after he assumed his duties at the Brown Street restaurant, Mr. Dougherty reviewed employees' records and noted that Mr. Moore was receiving a wage of approximately $10.00 per hour while team members were receiving between $7.00 and $8.00 per hour. Dougherty Dec., PageID 241. Mr. Dougherty advised Mr. Smith and Mr. Falk what he had determined about Mr. Moore's rate of pay. *Id.*; Falk Dec., PageID 237-38. On or about March 11, 2011, after consulting with Messrs. Smith and Falk, Mr. Dougherty officially changed Mr. Moore's title from shift coordinator to team member and reduced Mr. Moore's rate of pay to that of a team member. Dougherty Dec., PageID 241; Falk Dec., PageID 238-39.

On March 12, 2010, Mr. Moore filed a Charge of Discrimination with the OCRC alleging that Burger King retaliated against him when it demoted him from the position of shift supervisor to the position of crew member. Moore Depo., Ex. J thereto, PageID 200. On May 15, 2010, Mr. Moore voluntarily terminated his employment with Burger King. Moore Depo. at 171-72, PageID 131; Falk Dec., PageID 239; Dougherty Dec., PageID 242. On or about February 24, 2011, the OCRC advised Mr. Moore that it had, initially and on reconsideration, determined that there was no probable cause to believe that Burger King had engaged in discriminatory practices. PageID 197. On April 6, 2011, the EEOC advised Mr. Moore that it had adopted the OCRC's findings, was closing its file on his Charge, and issued him a Right to Sue

Letter.  Moore Depo., Ex. H attached thereto, PageID 196.  Mr. Moore filed this action on May 9, 2011.  (Doc. 2).

The Court notes that Mr. Moore's Complaint in this Court alleges only that Burger King retaliated against him when it demoted him from the position of shift coordinator to team member and reduced his salary from the shift coordinator level to the team member level.  *Id.*

Title VII prohibits discrimination in employment on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It also prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Similarly, the ADEA prohibits discrimination in employment because of an individual's age as well as retaliation against an individual "because he has opposed any practice made unlawful by this section or because such individual … has made a charge … under this chapter."  29 U.S.C. §§ 623(a)(1), (d).

In order to establish a *prima facie* case of retaliation, Mr. Moore must present evidence that: (1) he engaged in activity protected by title VII and/or the ADEA; (2) Burger King and Mr. Daugherty knew that he had engaged in the protected activity; (3) he suffered an adverse employment action; and (4) there is a causal connection between his protected activity and the adverse employment action.  *Strouss v. Michigan Dept. of Corrections,* 250 F.3d 336, 342 (6th Cir. 2001), abrogated on different grounds by *Arbaugh v. Y&H Corp.,* 546 U.S. 500 (2006) as recognized in *Wrobbel v. Int'l Brotherhood Elec. Workers,* 638 F.Supp.2d 780, 790 (E.D. Mich. 2009)(citations omitted)(Title VII retaliation claim); *Spengler v. Worthington Cylinders,* 615 F.3d 481, 491 (6th Cir. 2010)(ADEA retaliation claim).

For purposes of the present Motion *only*, Burger King and Mr. Dougherty essentially agree that Mr. Moore has established the first three elements of a *prima facie* case; that is, Defendants concede: (1) Mr. Moore engaged in protected activity; (2) they knew that he had engaged in that activity; and (3) Mr. Moore suffered an adverse employment action.  What Burger King and Mr. Daugherty do argue, however, is that Mr. Moore is not able to establish the fourth element, a causal connection between his protected activity and the adverse employment action.

The Sixth Circuit has repeatedly cautioned against inferring causation based on temporal proximity alone.  *Wasek v. Arrow Energy Services, Inc.,* ___ F.3d ___, ___, 2012 WL 2330824 (6th Cir. June 20, 2012), citing *Spengler v. Worthington Cyclinders,* 615 F.3d 481, 494 (6th Cir. 2010)("[T]emporal proximity, standing alone, is not enough to establish a causal connection for a retaliation claim.")(citing *Tuttle v. Metro. Gov't of Nashville,* 474 F.3d 307, 321 (6th Cir. 2007)); *but see Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 525-26 (6th Cir. 2008)(reasoning that temporal proximity may be enough when it so closely follows the protected activity that there would be no other evidence to couple with the temporal proximity). Therefore, if Mr. Moore is to survive summary judgment on his retaliation claim, he must present causation evidence other than temporal proximity.  Mr. Moore has failed to do so.

As noted by Burger King and Mr. Dougherty, Mr. Moore testified at his deposition that he does not have *any* evidence that Mr. Dougherty's decisions to demote him to crew member and to reduce his pay had anything to do with his protected activity:

> Q. What is your reason for believing that any actions they [Defendants] took were in retaliation for something?  What is the something that you think they were retaliating for? What did you do that caused them to retaliate against you?

A. Taking them through this in the first place as far as the whole legal procedure with the EEOC, the NAACP, the Ohio Commission, that was my whole reason for believing for the retaliation.

Q. But Matthew [Dougherty] didn't start working for Burger King at that location until January of 2010, correct?

A. Managers go and come, managers have knowledge of their, the individuals that are working in there for them.

Q. Okay. What evidence do you have that any actions Matthew [Dougherty] ever took in retaliation to your employment, what evidence do you have that any of those actions had anything to do with anything that he heard from other managers?

A. I never was at a manager meeting so I don't have any evidence.

Q. So, and you don't have any documents that suggest that Matthew [Dougherty's] decisions concerning your employment—

A. Based on –

Q. – related to anything other than your performance?

A. Based on being with me and coming into a new store and not even having been there a whole month, and you have other employees to work with and you can come up with this, with an evaluation like this. And then on top of the evaluation like this, forging it [referencing February, 2010, evaluation; Moore Depo. Ex. I attached thereto, PageID 198-99].

Q. Are you alleging that Matthew [Daugherty] forged the document?

A. No, I'm not alleging that Matthew forged it. The documents are forged but I'm not alleging who did it.

Q. What evidence do you have that they were forged?

A. It is not my signature, it is not my writing or my signature.

Q. But you agree with the contents of the document, correct?

A. My Signature, my writing. It's not about me agreeing with the contents.  If I didn't write it, I didn't write it.

>Q. Okay. But you do agree with the content, correct?
>
>A. Yes.
>
>Q. And you don't have any evidence that Matthew [Dougherty's] decision to lower your pay had anything to do with your prior complaints against Burger King, do you?
>
>A. No.

Moore Depo. at 202-205, PageID 139.

Mr. Moore admitted at his deposition that he agreed with the contents of the below-average evaluation which Mr. Daugherty gave to him in February, 2010. More importantly, however, Mr. Moore admitted that he has absolutely no evidence that the Defendants' actions had anything to do with his protected activity. Further, Mr. Moore has not come forward with *any* causation evidence in opposition to Defendants' present Motion. Mr. Moore's admissions at his deposition that he has no evidence that Defendants' actions had anything to do with his protected activity and his failure to come forward with causation evidence are fatal to his claim that Defendants retaliated against him in violation of Title VII and/or the ADEA.

Keeping in mind its duty to liberally construe a *pro se* litigant's pleadings, this Court will assume *arguendo* that, in addition to his retaliation claim, Mr. Moore has also alleged that Defendants discriminated against him on the basis of his race and age when, after he attended one week of manager training, it denied him further training and a promotion to the position of shift coordinator.

As noted above, Mr. Moore filed a complaint with the OCRC on December 24, 2008, alleging Burger King discriminated against him on the basis of race and age when it denied him further manager training as well as a promotion to shift coordinator. Moore Depo., Ex. E thereto, PageID 182. As also noted, on December 22, 2009, the EEOC advised Mr. Moore that it

was closing the matter and it issued a right to sue notice. *Id.,* Ex. G thereto, PageID 185.  Mr. Moore received that notice in late December, 2009, or early January, 2010.  Moore Depo. at 189, PageID 135.

A discrimination litigant is required to file a civil action within ninety days of receiving a right to sue notice from the EEOC.  42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e); *Seay v. Tennessee Valey Auth.,* 339 F.3d 454, 469 (6th Cir. 2003). However, because this requirement is not jurisdictional, a court may apply equitable tolling, which permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim. *Id.* (internal quotations and citations omitted).

Mr. Moore has admitted that he received the right to sue notice from the EEOC in either late December, 2009, or early January, 2010. Therefore, this is not a case where application of equitable tolling is appropriate. Giving Mr. Moore the benefit of the doubt, the Court will assume he received the notice from the EEOC on the last day of January, 2010.  Mr. Moore did not file the present action until May 9, 2011, long after the ninety-day period had passed.  Mr. Moore's *pro se* status does not excuse noncompliance with this procedural rule that he file his action within ninety days of receiving the right to sue notice.  See *In re: G.A.D., Inc.,* 340 F.3d 331, 335 (6th Cir. 2003).

Accordingly, to the extent that Mr. Moore has alleged that Defendants discriminated against him on the basis of race and age when  he was denied continued manager training and denied the opportunity to work as a shift manager, because Mr. Moore failed to timely file his Complaint, the Court must dismiss it. See *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 557-58 (6th Cir. 2000)(citations omitted).

This Court concludes that there are no genuine issues of material fact and that Defendants Burger King and Matthey Dougherty are entitled to judgment as a matter of law.

It is therefore recommended that Defendants' Motion for Summary Judgment, (Doc. 22), be granted. It is also recommended that judgment be entered in favor of Defendants and against Plaintiff and that the Complaint herein be dismissed with prejudice.

July 5, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).